# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Corbin R. Davis

### KRUSAC v COVENANT MEDICAL CENTER, INC

Docket No. 149270. Argued January 13, 2015 (Calendar No. 4). Decided April 21, 2015.

John Krusac, as personal representative of the estate of Dorothy Krusac, brought a medical malpractice action in the Saginaw Circuit Court against Covenant Medical Center, Inc., alleging that Dorothy Krusac died as a result of injuries she sustained when she rolled off an operating table following a cardiac catheterization procedure. During discovery, it became known that one of the attending medical personnel had filled out an incident report shortly after the event and submitted it to her supervisor. Plaintiff filed a motion in limine, asking the court to inspect the incident report in camera and provide plaintiff with the facts contained in it. The trial court, Fred L. Borchard, J., denied plaintiff's motion on the ground that the peer-review privilege set forth in MCL 333.20175(8) and MCL 333.21515 protected the report from discovery. On plaintiff's motion for reconsideration, however, the court reviewed the report in camera and subsequently ordered defendant to provide plaintiff with a portion of the incident report that contained only objective facts in light of *Harrison v Munson Healthcare, Inc*, 304 Mich App 1 (2014), which held that the peer-review privilege does not apply to objective facts contained in an incident report. Defendant sought leave to appeal the order in the Court of Appeals and moved to stay the proceedings, both of which motions the Court of Appeals denied. Defendant then sought leave to appeal in the Supreme Court and again moved to stay the proceedings. The Supreme Court granted both motions. 496 Mich 855 (2014).

In an opinion per curiam signed by Chief Justice YOUNG and Justices MARKMAN, KELLY, ZAHRA, MCCORMACK, and VIVIANO, the Supreme Court *held*:

MCL 333.20175(8) and MCL 333.21515 do not contain an exception to the peer-review privilege for objective facts. To the extent that *Harrison* held otherwise, it was wrongly decided and was overruled. MCL 333.20175(8) and MCL 333.21515 make privileged all records, data, and knowledge collected for or by a peer-review committee in furtherance of its statutorily mandated purpose of reducing morbidity and mortality and improving patient care. This includes objective facts gathered contemporaneously with an event contained in an otherwise

privileged incident report.  The trial court's order for defendant to produce the objective facts, which was based on *Harrison*'s holding, was vacated, and the case was remanded for further proceedings.

Trial court order vacated; case remanded for further proceedings.

Justice BERNSTEIN took no part in the decision of this case.

©2015 State of Michigan

# OPINION

Chief Justice:          Justices:

Robert P. Young, Jr.     Stephen J. Markman
                         Mary Beth Kelly
                         Brian K. Zahra
                         Bridget M. McCormack
                         David F. Viviano
                         Richard H. Bernstein

FILED April 21, 2015

STATE OF MICHIGAN

SUPREME COURT

JOHN KRUSAC, Personal Representative of
the ESTATE OF DOROTHY KRUSAC,

      Plaintiff-Appellee,

v                                                                No. 149270

COVENANT MEDICAL CENTER, INC.,
d/b/a COVENANT MEDICAL CENTER-
HARRISON, d/b/a COVENANT
HEALTHCARE,

      Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH (except BERNSTEIN, J.)

PER CURIAM.

In this interlocutory appeal, we are once again asked to consider the scope of the peer review privilege found in MCL 333.20175(8) and MCL 333.21515 of the Public Health Code, MCL 333.1101 *et seq*. Specifically, we must decide whether the trial court erred by ordering production of the objective facts contained in an incident report authored by an employee of defendant Covenant Healthcare. The trial court's decision was based on *Harrison v Munson Healthcare, Inc*, 304 Mich App 1; 851 NW2d 549

(2014), which held, in part, that the peer review privilege does not protect objective facts gathered contemporaneously with an event.

We hold that §§ 20175(8) and 21515 do not contain an exception to the peer review privilege for objective facts. As a result, this portion of *Harrison* was wrongly decided. In this case, the trial court erred by relying on *Harrison* to order production of the objective-facts portion of the incident report. Therefore, we vacate the trial court's May 8, 2014 order and remand for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

In September 2008, Pramod K. Sanghi, M.D., performed a cardiac catheterization on 80-year-old decedent Dorothy Krusac, successfully placing stents in Krusac's heart. Immediately following the procedure, however, Krusac began moving her legs around and rolled off the operating table. Three medical personnel were present when this happened: Deborah Colvin, R.N., Heather Gengler, R.N., and Rogers Gomez, the lab technician. According to the deposition testimony of Colvin and Gomez, they were able to catch Krusac and cradle her gently to the floor, where she came to rest on her left side. At that time, Krusac denied hitting her head, but later complained of neck and back pain from the fall. The CT scan performed later that day showed no evidence of injury from the fall. Shortly after the surgery and fall, Krusac died.

Plaintiff John Krusac, as personal representative of the estate of Dorothy Krusac, filed a medical malpractice complaint in the Saginaw Circuit Court against defendant, alleging that Krusac died as a result of injuries sustained from the fall. During discovery, it became known that Colvin had filled out an incident report shortly after the event and

2

submitted it to her supervisor. Plaintiff filed a motion in limine on the eve of trial, asking the court to conduct an in camera inspection of the incident report and provide plaintiff with the facts contained in it. Relying on *Harrison*, plaintiff argued that the facts were necessary to cross-examine the hospital staff and that it would be unethical for defendant to offer a defense inconsistent with the facts contained in the report. Defendant responded that the peer review privilege under §§ 20175(8) and 21515 protected the report from discovery. After hearing oral arguments, the trial court denied plaintiff's motion. Plaintiff thereafter sought reconsideration, which the court granted. The court ordered defendant to produce a copy of the report for in camera review. After reviewing the report, on May 8, 2014, the trial court issued an order requiring defendant to provide plaintiff with the first page of the incident report, which contained only objective facts. The court based its decision on the Court of Appeals' recent holding in *Harrison* that the peer review privilege does not apply to objective facts contained in an incident report.

Defendant sought leave to appeal in the Court of Appeals, and moved for immediate consideration and a stay of the proceedings. The Court of Appeals granted immediate consideration, but denied defendant's application for leave to appeal for failure to persuade the Court of the need for immediate appellate review. The Court also denied the motion to stay the proceedings. Defendant then sought review by this Court. After granting defendant's motion to stay the trial court proceedings, we granted leave to appeal and directed the parties to address

> (1) whether *Harrison v Munson Healthcare, Inc,* 304 Mich App 1 (2014), erred in its analysis of the scope of the peer review privilege, MCL 333.21515; and (2) whether the Saginaw Circuit Court erred when it ordered the defendant to produce the first page of the improvement report based on its conclusion that "objective facts gathered contemporaneously

3

with an event do not fall within the definition of peer review privilege." [*Krusac v Covenant Med Ctr, Inc*, 496 Mich 855-856 (2014).]

## II.  STANDARD OF REVIEW

This case involves a question of statutory interpretation, which we review de novo. *Madugula v Taub*, 496 Mich 685, 695; 853 NW2d 75 (2014).  As with any statutory interpretation, our goal is to give effect to the Legislature's intent, focusing first on the statute's plain language.  *Id*. at 696.  When the language of a statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written.  No further judicial construction is required or permitted.  *Id*. (citation and quotation marks omitted).

## III.  ANALYSIS

The peer review privilege is a creature of statute, not the common law.  See Scheutzow & Gillis, *Confidentiality and Privilege of Peer Review Information: More Imagined Than Real*, 7 JL & Health 169, 181 (1992-1993) ("It is generally accepted that the privilege ascribed to peer review proceedings does not arise from any recognized common law principle, but is rather a legislative creation . . . .").  Therefore, in assessing whether the peer review privilege applies to objective facts contained in an incident report, we must turn first to the language of the relevant statutes.  See *Dorris v Detroit Osteopathic Hosp Corp*, 460 Mich 26, 33; 594 NW2d 455 (1999).

MCL 333.21513(d) imposes a duty on hospitals to create peer review committees "for the purpose of reducing morbidity and mortality and improving the care provided in the hospital for patients."  Essential to the peer review process is the candid and conscientious assessment of hospital practices.  *Feyz v Mercy Mem Hosp*, 475 Mich 663,

4

680; 719 NW2d 1 (2006).  To encourage such an assessment by hospital staff, the

Legislature has protected from disclosure the records, data, and knowledge collected for

or by peer review committees.  *Id*. at 680-681.  To this end, MCL 333.20175(8) reads:

> The records, data, and knowledge collected for or by individuals or committees assigned a professional review function in a health facility or agency, or an institution of higher education in this state that has colleges of osteopathic and human medicine, are confidential, shall be used only for the purposes provided in this article, are not public records, and are not subject to court subpoena.

Similarly, MCL 333.21515 provides:

> The records, data, and knowledge collected for or by individuals or committees assigned a review function described in this article are confidential and shall be used only for the purposes provided in this article, shall not be public records, and shall not be available for court subpoena.[1]

These statutes, and their predecessors,[2] have been interpreted as "fully protect[ing]

quality assurance/peer review records from discovery . . . ."  *Dorris*, 460 Mich at 40.  For

example, in *Attorney General v Bruce*, 422 Mich 157, 164-165; 369 NW2d 826 (1985),

we rejected the Attorney General's argument that the privilege "was intended only to

protect the confidentiality of peer review proceedings from discovery in circuit court

proceedings (i.e., malpractice actions) . . . ."  Instead, we held that the privilege protects

from disclosure records sought by the Board of Medicine and the Department of

---

[1] In this opinion, we use "peer review committee" to refer generally to "individuals or committees assigned a professional review function" under MCL 333.20175(8) and "individuals or committees assigned a review function" under MCL 333.21515.

[2] The first peer review statutes were enacted by our Legislature nearly 50 years ago.  See MCL 331.422(1) and (2) of the Hospital Licensing Act, 1968 PA 17, repealed by 1978 PA 368.

5

Licensing and Regulation and ordered by investigative subpoena to be produced. *Id*. at 173. Similarly, in *In re Investigation of Lieberman*, 250 Mich App 381, 389; 646 NW2d 199 (2002), the Court of Appeals held that the privilege protects from disclosure records sought pursuant to a search warrant in a criminal investigation. Indeed, after reviewing the language of § 21515, the court concluded that "the Legislature has imposed a *comprehensive ban* on the disclosure of [peer review materials.]" *Id*. at 387 (emphasis added).

The Court of Appeals took a more constricted view of the peer review privilege in *Harrison*. In that case, the plaintiff sued a surgeon and the hospital (the defendants) after receiving a burn from a surgical instrument during surgery. At trial, the plaintiff learned that an operating room nurse had authored an incident report. The plaintiff sought to introduce the report. The defendants objected, claiming that the peer review privilege protected the report from introduction. The trial court reviewed the report at an in camera hearing and determined that the facts in the report contradicted the operating room nurse's deposition testimony. The court found that the report itself was protected by the peer review privilege but ruled that the facts contained in the report, as opposed to the conclusions drawn, should have been documented in the plaintiff's medical record and made available to the plaintiff. The court declared a mistrial and imposed sanctions totaling roughly $54,000 on the defendants and their attorney based on their presentation of a defense inconsistent with the facts contained in the report.

In a published opinion, the Court of Appeals addressed whether the peer review privilege applied to the incident report at issue. Relying heavily on caselaw from foreign jurisdictions, the panel found a distinction between "factual information objectively

6

reporting contemporaneous observations or findings and 'records, data, and knowledge' gathered to permit an effective review of professional practices." *Harrison*, 304 Mich App at 30. It held that "[o]bjective facts gathered contemporaneously with an event do not fall within [the peer review privilege.]" *Id*. at 32. It reasoned that "[t]o hold otherwise would grant risk managers the power to unilaterally insulate from discovery firsthand observations that the risk manager would prefer remain concealed" and that "[t]he peer-review statutes do not sweep so broadly." *Id*. at 34. The panel concluded that the facts recorded on the first page of the incident report were not privileged, but that the remainder of the incident report was protected because it reflected a deliberative review process.[3]

However, contrary to the *Harrison* panel's conclusion, the peer review statutes do not contain an exception for objective facts contained in an otherwise privileged incident report. Both §§ 20175(8) and 21515 protect the "records, data, and knowledge" collected for or by a peer review committee. While the words "record," "data," and "knowledge" are so common they hardly bear defining, a review of the dictionary definitions of each demonstrates that the *Harrison* panel's interpretation contradicts the plain language of the peer review statutes. See *Spectrum Health Hosp v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503, 515; 821 NW2d 117 (2012) (recognizing that a court "may consult dictionary definitions to give words their common and ordinary meaning") (citation omitted). "Record" is defined as "an account in writing or the like preserving the memory or

---

[3] The panel also affirmed the trial court's decision to sanction defendants but remanded for redetermination of the proper apportionment of the sanctions. *Harrison*, 304 Mich App at 43-45.

7

knowledge *of facts* or events." *Random House Webster's College Dictionary* (2001) (emphasis added). "Data" is defined as "*individual facts*, statistics, or items of information." *Id.* (emphasis added). "Knowledge" is defined as "*acquaintance with facts*, truths, or principles" or "familiarity or conversance, as by study or experience." *Id.* (emphasis added). Because the ordinary meaning of these statutory terms plainly encompasses objective facts, we hold that objective facts are subject to the peer review privilege. We therefore disagree with the *Harrison* panel's conclusion that the Legislature intended to exclude from protection objective facts contained in an otherwise peer review privileged incident report.[4]

Plaintiff argues that an interpretation of §§ 20175(8) and 21515 that protects objective facts from disclosure would conflict with MCL 333.20175(1), which requires a hospital to "keep and maintain a record for each patient, including a full and complete record of tests and examinations performed, observations made, treatments provided,

---

[4] To create the objective-facts exception, the *Harrison* panel relied on several cases from outside our jurisdiction. However, resort to these cases was not permitted because the peer review statutes are unambiguous. See *Madugula*, 496 Mich at 696. In any event, the cases utilized by the *Harrison* panel do not support the creation of such an exception. The panel relied upon three cases cited by this Court in *Monty v Warren Hosp Corp*, 422 Mich 138, 146-147; 366 NW2d 198 (1985): *Davidson v Light*, 79 FRD 137 (D Colo, 1978), *Bredice v Doctors Hosp*, 50 FRD 249 (D DC, 1970), and *Coburn v Seda*, 101 Wash 2d 270; 677 P 2d 173 (Wash, 1984). However, the *Monty* court relied on those cases as guidance for determining whether a hospital committee was assigned a peer review function, not whether the content of an incident report was protected by the peer review privilege. In addition, a reading of these cases indicates that they shed no light on the scope of our peer review statutes as they either do not discuss a statutory privilege at all (e.g., *Bredice* and *Davidson*), or pertain to a statutory privilege materially different from ours (e.g., *Coburn*).

8

and . . . the purpose of hospitalization."[5]  However, § 20175(1) does not alter the scope of the peer review privilege.  Whereas §§ 20175(8) and 21515 pertain to a hospital's duty under MCL 333.21513(d) to create a peer review committee that collects and reviews information in an effort to reduce morbidity and mortality and improve patient care, § 20175(1) imposes on a hospital an entirely distinct and unrelated duty—to make a full and complete medical record concerning a patient's current care.  Because these provisions pertain to entirely distinct duties, no conflict exists, and we cannot conclude that the Legislature intended § 20175(1) to create an exception to the peer review privilege.  See *Bruce*, 422 Mich at 167-169 (rejecting an argument that disclosures required by another subsection of § 20175 defeated the peer review privilege).[6]

The *Harrison* panel, certain amici, and plaintiff have expressed concern that a holding that the peer review privilege applies to objective facts in an incident report "would grant risk managers the power to unilaterally insulate from discovery firsthand observations that the risk manager would prefer remain concealed."  *Harrison*, 304 Mich

---

[5] Essentially, plaintiff asks us to read the statutes *in pari materia*—i.e., construing them together as one law to resolve the alleged conflict.  See *Int'l Business Machines v Dep't of Treasury*, 496 Mich 642, 652; 852 NW2d 865 (2014) (opinion by VIVIANO, J.).

[6] Plaintiff argues, in essence, that since a hospital is required to publish certain factual information in the patient's medical record, it cannot claim the same information is protected by the peer review privilege.  However, this argument misapprehends the nature of a privilege under Michigan law.  We have long ago "repudiated the theory that once . . . confidential information ha[s] been published, the privilege of objecting to its repetition ha[s] been waived . . . ."  *Polish Roman Catholic Union of America v Palen*, 302 Mich 557, 562; 5 NW2d 463 (1942) (citation omitted).  Rather, even though the information may properly be proved from another source—i.e., the medical record or witness testimony—a hospital may still claim an exemption from disclosing materials that are subject to the peer review privilege.

9

App at 34.  However, although the terms "records," "data," and "knowledge" are broad

enough to include objective facts, the scope of the privilege is not without limit.  Instead,

the privilege only applies to records, data, and knowledge that are collected for or by the

committee under §§ 20175(8) and 21515 "for the purpose of reducing morbidity and

mortality and improving the care provided in the hospital for patients."

MCL 333.21513(d).  See also *Dorris*, 460 Mich at 40.[7]  Moreover, while the peer review

privilege may make it more difficult for a party to obtain evidence,[8] the burden on a

litigant is mitigated by the fact that he or she may still obtain relevant facts through

eyewitness testimony, including from the author of a privileged incident report, and from

the patient's medical record.[9]  Finally, if a litigant remains unsatisfied with the statutory

---

[7] In providing guidance to courts on how to engage in this statutory inquiry, we have
previously stated:

> In determining whether any of the information requested is protected
> by the statutory privilege, the trial court should bear in mind that mere
> submission of information to a peer review committee does not satisfy the
> collection requirement so as to bring the information within the protection
> of the statute.  Also, in deciding whether a particular committee was
> assigned a review function so that information it collected is protected, the
> court may wish to consider the hospital's bylaws and internal regulations,
> and whether the committee's function is one of current patient care or
> retrospective review.  [*Monty*, 422 Mich at 146-147 (citations omitted).]

[8] Indeed, by their very nature, privileges "are not designed or intended to facilitate the
fact-finding process or to safeguard its integrity," but "[t]heir effect instead is clearly
inhibitive; rather than facilitate the illumination of truth, they shut out the light." *People
v Warren*, 462 Mich 415, 428; 615 NW2d 691 (2000), quoting 1 McCormick, Evidence
(5th ed), § 72, pp 298-299.

[9] To the extent plaintiff is arguing that defendant's *failure* to comply with its statutory
duty to publish certain information in the medical record should be deemed a waiver of
the peer review privilege, we reject that claim as well.  As noted earlier, hospitals have a
statutory duty to maintain a full and complete medical record for each patient, which

10

balance struck between disclosing information to patients and protecting peer review materials, any recalibration must be done by the Legislature.  See *Koontz v Ameritech Servs, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2012) ("Because the proper role of the judiciary is to interpret and not write the law, courts simply lack authority to venture beyond the unambiguous text of a statute.").

For the reasons stated above, we reject the *Harrison* panel's holding that objective facts gathered contemporaneously with an event do not fall within the peer review privilege.  Accordingly, we overrule *Harrison* to the extent that it is inconsistent with our opinion today.[10]  Instead, we hold that §§ 20175(8) and 21515 make privileged all records, data, and knowledge collected for or by a peer review committee in furtherance of its statutorily mandated purpose of reducing morbidity and mortality and improving patient care.  This includes objective facts gathered contemporaneously with an event contained in an otherwise privileged incident report.

---

includes, among other things, observations made and treatments provided to the patient. MCL 333.20175(1).  However, deeming the peer review privilege waived is not among the sanctions provided by the Legislature for violations of § 20175(1).  See, e.g., MCL 333.20175a, 333.20176(1); see also *Fischer v WA Foote Mem Hosp*, 261 Mich App 727, 730-731; 683 NW2d 248 (2004) (discussing the ways within the Public Health Code to enforce its provisions).

[10] The *Harrison* panel also found support for its decision in *Centennial Healthcare Mgt Corp v Dep't of Consumer & Indus Servs*, 254 Mich App 275; 657 NW2d 746 (2002). However, *Centennial* is inapposite.  *Centennial* does not address whether a private litigant has a right to review objective facts contained in an otherwise privileged incident report, but instead involves whether an administrative rule promulgated by the Michigan Department of Consumer and Industry Services infringed the peer review privilege.  But, to the extent *Centennial* may be read as contrary to our opinion today, we limit its reasoning and holding to its specific facts.

11

## IV. APPLICATION

Because *Harrison* was wrongly decided and the trial court relied on *Harrison* to order production of a portion of the incident report, we vacate the trial court's May 8, 2014 order in its entirety. The scope of this interlocutory appeal is limited to whether the trial court erred by relying on *Harrison* to order production of the objective facts found in the incident report. Having answered that question, we remand to the trial court for further proceedings.

## V. CONCLUSION

We conclude that *Harrison* was wrongly decided, and we overrule the portions of it that are inconsistent with this opinion. Because the trial court in the instant case erred by relying on *Harrison* to order production of the objective facts contained in the incident report authored by Colvin, we vacate the trial court's May 8, 2014 order and remand to the trial court for further proceedings consistent with this opinion.

> Robert P. Young, Jr.
> Stephen J. Markman
> Mary Beth Kelly
> Brian K. Zahra
> Bridget M. McCormack
> David F. Viviano

BERNSTEIN, J., took no part in the decision of this case.

12