# S T A T E   O F   M I C H I G A N
# C O U R T   O F   A P P E A L S

JEANNE HARRISON,

        Plaintiff-Appellee/Cross-Appellant,

v

MUNSON HEALTHCARE, INC.,

        Defendant-Appellant/Cross-
        Appellee,

and

SURGICAL ASSOCIATES OF TRAVERSE
CITY, PLLC, WILLIAM P. POTTHOFF, MD,
and CINDY GILLIAN,[1] RN,

        Defendants.

UNPUBLISHED
October 19, 2017

No.   331957
Grand Traverse Circuit Court
LC No.   2009-027611-NH

JEANNE HARRISON,

        Plaintiff-Appellee,

v

MUNSON HEALTHCARE, INC., SURGICAL
ASSOCIATES OF TRAVERSE CITY, PLLC,
WILLIAM P. POTTHOFF, MD, and CINDY
GILLIAN, RN,

        Defendants,

and

No.   332017
Grand Traverse Circuit Court
LC No.   2009-027611-NH

---

[1] Cindy Gillian appears as Cindy Gilliand throughout the lower court record and file.  We will use the spelling Gilliand throughout the body of this opinion.

THOMAS R. HALL,

        Appellant.

_____

Before: MURRAY, P.J., and SAWYER and MARKEY, JJ.

PER CURIAM.

In these consolidated appeals after remand, defendant, Munson Healthcare, Inc., and its attorney, defendant Thomas R. Hall,[2] appeal as of right the trial court's decision and order reimposing sanctions.[3] In Docket No. 331957, plaintiff Jeanne Harrison also cross-appeals the trial court's sanctions order. For the reasons stated herein, we reverse.

## I. FACTS AND PROCEDURAL HISTORY

These consolidated appeals arise out of Harrison's action for medical malpractice. On April 24, 2007, during thyroid surgery performed by Dr. William P. Potthoff at Munson Medical Center, owned by Munson Healthcare, Harrison suffered a quarter-sized burn on her forearm from an electrocautery device called a Bovie. According to two staff members involved in the surgery, the Bovie activation alarm sounded during the procedure, prompting those in the operating room to step back and look for the Bovie. It was discovered on a surgical drape covering Harrison's arm, and may have been activated when Dr. Potthoff leaned against it. When the drape was ultimately removed, the burn on Harrison's arm became apparent. Dr. Potthoff informed Harrison's husband of the burn, obtained permission to make the necessary repair during surgery, and spoke with plaintiff about the burn that afternoon.

Upon recovering from her thyroid surgery, Harrison contacted Barbara A. Peterson, Munson's operating room manager, and Bonnie Schreiber, Munson's risk manager, to inquire about the burn. Dissatisfied with the responses she received, she filed this medical malpractice action.

Throughout discovery, Harrison attempted to learn who had responsibility for the Bovie at the time she was burned, but defendants denied that any surgical participants possessed a present memory of the exact circumstances until the depositions of David Scott Babcock, a surgical technologist, and Ann Tembruell, a student at the time of Harrison's surgery working for Babcock. Both Babcock and Tembruell recalled hearing the Bovie alarm during the procedure, and discovering the Bovie lying on the drape over Harrison's arm. Neither, however, knew how the Bovie came to rest there.

_____

[2] Although Hall brought a separate appeal, he does not raise his own issues. Instead, he incorporates and adopts the arguments set forth in Munson's brief and reply brief on appeal.

[3] We refer to Hall and Munson collectively as defendants.

At trial, Hall and Munson presented a defense based on habit and routine practice, essentially presenting testimony and argument that those involved in Harrison's surgery exercised the proper standard of care, and that the Bovie may have become accidentally unholstered. Then, through the testimony of Peterson, Munson's operating room manager, the trial court learned that an incident report had been prepared by nurse Cindy Gilliand on the day of Harrison's surgery. On the first page, Gilliand handwrote, "During procedure, bovie was laid on drape, in a fold." Further, on the second page of the report, Peterson handwrote, "Bovie holder was on field for this case, however bovie was not placed in it." This second notation was dated 15 days after Harrison's surgery.

Following an in camera review of the incident report, the trial court declared a mistrial. The trial court concluded that an evidentiary hearing was needed to determine whether the incident report should qualify as a peer-review-privileged document, and expressed concern about the ethical implications of presenting a defense inconsistent with the incident report.

In an April 8, 2011 decision and order following the evidentiary hearing, the trial court ruled that the incident report and related documents were protected by the peer-review privilege, but stated: "[T]he facts recorded in the report as opposed to the conclusions drawn in the report should not have been kept from the jury in view of the holding in *Centennial*[4] and [Munson's] own internal policy. Those facts should have been recorded in the medical chart. And, if the facts are not recorded and not given to the jury, the Defendants are precluded ethically from offering an explanation that is inconsistent with those facts." In so doing, it found that the statements made in the incident report – that the " 'Bovie was laid on the drape' " and that the " 'holster was on field for this case, however Bovie was not placed in it' " – were "grossly inconsistent with an argument that the Bovie was properly holstered and then accidentally unholstered," even if protected from disclosure by the peer-review privilege. Based on these findings, the court determined that Hall violated Michigan Rules of Professional Conduct (MRPC) 3.1 and 3.3, and imposed sanctions against Hall and Munson for violations of MCR 2.114(D) and (E), and MCL 600.2591(1).

Defendants appealed the original sanctions award, and this Court issued an opinion on January 30, 2014, upholding the trial court's decision and order. *Harrison v Munson Healthcare, Inc*, 304 Mich App 1, 23, 43-45; 851 NW2d 549 (2014), vacated by 498 Mich 888 (2015). Citing *Centennial*, the Court first held that "[o]bjective facts gathered contemporaneously with an event" are not shielded from disclosure by the peer-review privilege." *Harrison*, 304 Mich App at 31-32. Thus, it reasoned, "Gilliand's contemporaneous, handwritten operating-room observations were not subject to a peer-review privilege," and "the initial page of the incident report did not fall within the protection of MCL 333.21515." *Id*. at 27.

Second, recognizing that the court did not sanction Munson and Hall for refusing to produce the incident report, this Court affirmed the sanctions under MRPC 3.1 and 3.3, MCR 2.114(D) and (E), and MCL 600.2591(1). *Harrison*, 304 Mich App at 40-45. In so doing, it

---

[4] *Centennial Healthcare Mgt Corp v Mich Dep't of Consumer & Indus Servs*, 254 Mich App 275; 657 NW2d 746 (2002).

reasoned that the court did not clearly err by finding, based on the relevant facts in the incident report, that "a surgical participant 'laid' the Bovie on the drape (accidentally, negligently or deliberately) and that that person, or another individual in the room, negligently failed to holster it," *id*. at 39, and "did not abuse his discretion by finding that Munson invoked MRE 406 in bad faith by introducing habit-and-practice evidence to prove conformity of conduct despite that the evidence known only to Munson soundly contradicted that defense," *id*. at 42.

Hall and Munson subsequently filed an application for leave to appeal this Court's decision, which the Michigan Supreme Court held in abeyance pending its decision in a similar case, *Krusac v Covenant Med Ctr, Inc*, 497 Mich 251; 865 NW2d 908 (2015). *Harrison v Munson Healthcare, Inc*, ___ Mich ___; 847 NW2d 498 (2014). In *Krusac*, the Supreme Court overruled *Harrison* to the extent that it conflicted with its holding that "§§ 20175(8) and 21515 do not contain an exception to the peer review privilege for objective facts." *Krusac*, 497 Mich at 253, 258-263. On September 30, 2015, it entered an order vacating the remainder of the Court of Appeals decision, as well as the trial court's April 8, 2011 sanctions order,[5] and remanded to the trial court, stating: "Because it is unclear from the circuit court's Decision and Order Regarding Motion for Sanctions whether this conclusion was central to its decision to sanction defendant Hospital and its counsel, we remand for reconsideration of the sanctions award. If it chooses to again impose sanctions, the court shall explain why the specific facts on which it relies to conclude that defendant Hospital and its counsel were precluded from arguing that the Bovie was inadvertently or accidentally unholstered justify its sanctions award." *Harrison v Munson Healthcare, Inc*, 498 Mich 888 (2015).

Following the Supreme Court's order, Harrison renewed her motion for sanctions in the trial court, arguing that the incident report and related documents were not protected by the peer-review privilege, and that sanctions were warranted against Hall and Munson pursuant to MCR 2.114, MCR 2.302(B), MCR 2.313(B), and MCL 600.2591(1), and (3)(a)(*ii*), for presenting a habit and practice defense inconsistent with the facts in the incident report. The itemization attached to the brief covered work performed by Harrison's counsel on appeal. In response, Munson (and thereby Hall)[6] asserted that no need existed to revisit whether the incident report and related documents were protected by the peer-review privilege, and argued that a new award for sanctions would be inappropriate because: (1) *Krusac* clarified that objective facts in otherwise-privileged documents must be protected from disclosure; (2) peer-review privileged materials may only be used for purposes provided in Article 17 of the Public Health Code, MCL 333.20101 to 333.22260; (3) the defense presented did not contradict the statements made in the incident report, and even if inconsistent, evidence of habit and routine practice is still admissible

---

[5] In so doing, the Supreme Court stated, "The circuit court erroneously relied on *Centennial Healthcare Mgt. Corp. v. Dep't of Consumer & Industry Services*, 254 Mich.App. 275, 657 N.W.2d 746 (2002), to conclude that the facts recorded in the incident report should not have been kept from the jury." *Harrison v Munson Healthcare, Inc*, 498 Mich 888 (2015).

[6] Hall filed a response to Harrison's renewed motion for sanctions, which simply adopted the arguments set forth in Munson's brief in opposition to Harrison's renewed motion for sanctions.

under MRE 406; and (4) Hall did not present false statements to the court because everyone knew the Bovie came to rest on the drape, but had no memory of how it got there.

Ultimately, the trial court entered an order reimposing sanctions against Munson and Hall for the reasons previously stated and restated. It also answered the question posed by the Supreme Court in its order vacating the original sanctions decision, writing: "This case returns to the trial court because it was not clear to the Michigan Supreme Court whether nondisclosure of the facts in the incident report was central to this Court's decision to sanction the Defendant Hospital. The answer is plainly, "No.' Central to this Court's decision to sanction the Defendant Hospital was a clear ethics violation and the breach of its own written internal policy to chart the 'facts of the event' in the 'patient's medical record.' "

## II. ANALYSIS

Defendants argue that the trial court exceeded its authority, and clearly erred, when it reimposed sanctions because the incident report was protected from disclosure by the peer-review privilege, and the habit and routine practice defense presented was not inconsistent with the notations made in the report.

This Court reviews a trial court's decision to impose sanctions for an abuse of discretion, "[b]ut the trial court's factual findings are reviewed for clear error." *Fette v Peters Constr Co*, 310 Mich App 535, 549; 871 NW2d 877 (2015). A "trial court abuses its discretion when its decision falls outside [the] range of principled outcomes." *Pontiac Fire Fighters Union Local 376 v Pontiac*, 482 Mich 1, 8; 753 NW2d 595 (2008). "A finding is clearly erroneous if, after a review of the record, this Court is left with a definite and firm conviction that a mistake was made." *Lawrence v Burdi*, 314 Mich App 203, 220; 886 NW2d 748 (2016).

The trial court imposed sanctions pursuant to MCR 2.114(D) and (E), and MCL 600.2591(1), and concluded that Hall violated MRPC 3.1 and 3.3.[7] Questions of statutory interpretation and the interpretation of court rules are reviewed de novo. *Ligons v Crittenton Hosp*, 490 Mich 61, 70; 803 NW2d 271 (2011). Further, this Court reviews a trial court's construction of the MRPC de novo. *Grievance Administrator v Fieger*, 476 Mich 231, 240; 719 NW2d 123 (2006).

Sanctions are proper under MCR 2.114(E) if an attorney or party signs a document in violation of MCR 2.114(D), which provides:

> The signature of an attorney or party, whether or not the party is represented by an attorney, constitutes a certification by the signer that
>
> (1) he or she has read the document;

---

[7] The court did not specifically list these provisions in its decision and order to reimpose sanctions following remand, but it did reaffirm the previous order of sanctions imposed on these bases.

(2) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and

(3) the document is not interposed for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation.

In other words, " '[s]anctions are warranted under MCR 2.114 where a plaintiff asserts claims without any reasonable basis in law or fact for those claims, or where the claims are asserted for an improper purpose.' " *Fette*, 310 Mich App at 550, quoting *Robert A Hansen Family Trust v FGH Indus, LLC*, 279 Mich App 468, 486; 760 NW2d 526 (2008).

Additionally, MCL 600.2591(1) provides:

Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.

According to the statute, a defense is frivolous when "[t]he party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true." MCL 600.2591(3)(a)(*ii*). Thus, if a party or its attorney presents a defense it knows to be untrue or not well grounded in fact based on information protected by the peer-review privilege, it appears that a trial court may impose sanctions pursuant to MCR 2.114 (if the defense is in a document) and MCL 600.2591.

However, we need not decide that issue because, after considering the information from the incident report, we hold that the trial court already erred when it determined that Hall and Munson presented a defense they knew to be false in light of the statements in the incident report.

The trial court, in both the original decision and order, and in its order following remand, imposed sanctions based on the finding that "the only contemporaneous record of the incident was diametrically opposed to [defendants'] proffered habit and practice testimony."[8] Specifically, the court determined that Munson's defense – that it did not violate the standard of care, and that the Bovie may have become accidentally unholstered – could not be true based on the notations made in the incident report.

In the first appeal from the trial court's sanctions order, this Court affirmed the sanctions, holding that the court did not clearly err by finding, based on the statements in the incident

---

[8] Again, the court stated in the order following remand that he was reimposing sanctions for the reasons previously stated. Thus, we consider the findings made in both.

report, that "a surgical participant 'laid' the Bovie on the drape (accidentally, negligently or deliberately) and that the person, or another individual in the room, negligently failed to holster it," *Harrison*, 304 Mich App at 39, and further "did not abuse [its] discretion by finding that Munson invoked MRE 406 in bad faith by introducing habit-and-practice evidence to prove conformity of conduct despite that the evidence known only to Munson soundly contradicted that defense, *id*. at 42. That decision was vacated, *Harrison v Munson Healthcare, Inc*, 498 Mich 888 (2015), and thus we are free to look at this anew, see *City of Troy v Papadelis (On Remand)*, 226 Mich App 90, 94; 572 NW2d 246 (1997) (reasoning that where an entire opinion in an earlier decision is vacated, the law-of-the-case doctrine does not apply).

Recognizing the deference with which this Court must review a trial court's findings under the clear error standard, *Arbor Farms, LLC v GeoStar Corp*, 305 Mich App 374, 386-387; 853 NW2d 421 (2014), we conclude that the trial court clearly erred. We first consider the referenced statements from the incident report. Gilliand's note states, "During procedure bovie was laid on drape, in a fold," while Peterson's notation reads, "Bovie holder was on field in this case, however bovie was not placed in it." Contrary to the court's conclusions, these statements are ambiguous and do not serve as unrebuttable evidence that the Bovie was placed on the drape, either deliberately or negligently, rather than accidentally unholstered. Gilliand's comment could mean that she witnessed someone place the Bovie on the drape, or could simply have been an inartful way of describing her observation that the Bovie was lying on the drape when discovered. Further, Peterson may have intended to convey that the Bovie was clearly not in the holster at the time Harrison was injured, because it was discovered on the drape covering her arm, and not that someone failed to place the Bovie in the holster.

Witness testimony throughout the case serves as further evidence that the statements are ambiguous. Dr. Potthoff, Gilliand, and Burgett testified in their depositions that they had no independent recollection of how Harrison came to be burned during the procedure, and other surgery participants testified at trial that they had no recollection of the procedure at all. And although Peterson testified at trial that under the circumstances of Harrison's injury, she would have spoken with the operating room participants, neither she nor many of the operating room participants recalled actually having those conversations. This raises doubts about her statement in the incident report, as she was not in the operating room herself during Harrison's surgery and would have had to rely on information from others to form any conclusions. Moreover, when questioned by the court at the evidentiary hearing, Gilliand testified as follows:

> *The Court*: So if it says the Bovie was laid on the drape, that's because you saw the Bovie laid on the drape?
>
> *The Witness*: To be honest with you, I don't know that I actually saw it laid on the drape. That may have been just a poor way of stating that. It may have—that's one of those things I try to be very articulate in my wording when it comes to things like this. [*Harrison*, 304 Mich App at 18.]

Giving due consideration to the ambiguity of the statements in the incident report, we cannot say that the trial court's imposition of sanctions under MCR 2.114(D) and (E), and MCL 600.2591(1), was proper. Its determination that defendants' habit and routine practice defense[9] should be precluded was based on the clearly erroneous finding that, in light of the information in the incident report, defendants knew that the Bovie was placed on the drape over Harrison's arm by a surgical participant, and not accidentally unholstered.[10]

By concluding that the trial court erred when it reimposed sanctions, we decline to address defendants' argument that the trial court lacked the authority to include appellate attorney fees in its sanctions award. Further, the only issue Harrison raises in her cross-appeal is that the trial court should have revisited, after remand, its prior ruling that the incident reported was protected from disclosure by the peer-review privilege. Nothing in the Supreme Court's decision in *Krusac* implies that either the trial court, or this Court, improperly determined that the incident report was protected by the peer-review privilege. The *Krusac* Court simply objected to the exclusion of the facts within the report from the privilege. *Krusac*, 497 Mich at 253, 258-263; *Harrison v Munson Healthcare, Inc*, 498 Mich 888 (2015). Moreover, the court made it clear that the privileged nature of the incident report was not central to its decision to impose sanctions, and it is not central to this Court's analysis of the issues presented. As stated above, the trial court erred in imposing sanctions against defendants, regardless of whether the incident report was protected by the peer-review privilege.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Having prevailed in full, defendants may tax costs. MCR 7.219(A).

/s/ Christopher M. Murray
/s/ David H. Sawyer
/s/ Jane E. Markey

---

[9] MRE 406 provides: "Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice."

[10] As an example, if one reasonably reads Gilliand's notation to mean that at some point during Harrison's surgery, the Bovie was discovered lying on the drape, Dr. Potthoff's testimony at trial that the Bovie may have become accidentally unholstered during the surgery would not be patently false.