# STATE OF MICHIGAN

# COURT OF APPEALS

ALI A. EL-KHALIL,

Plaintiff-Appellant,

v

OAKWOOD HEALTH CARE INC., OAKWOOD
HOSPITAL SOUTHSHORE, OAKWOOD
HOSPITAL DEARBORN, DR. RODERICK
BOYES, M.D., and DR. IQBAL NASIR, M.D.,

Defendant-Appellees.

UNPUBLISHED
November 14, 2019

No. 329986
Wayne Circuit Court
LC No. 15-008259-CK

ON REMAND

Before: STEPHENS, P.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

In this breach of contract and civil rights action, we twice previously affirmed the trial court's order granting summary disposition in defendants' favor and dismissing plaintiff's complaint. *El–Khalil v Oakwood Health Care Systems, Inc.*, unpublished per curiam opinion of the Court of Appeals, issued April 4, 2017 (Docket No. 329986); *El–Khalil v Oakwood Health Care Systems, Inc.*, unpublished per curiam opinion of the Court of Appeals, issued April 17, 2018 (Docket No. 329986). In doing so, we reviewed the trial court's summary disposition decision under the standards set forth in MCL 2.116(C)(8) and (10). The Michigan Supreme Court has now reversed our April 17, 2018 opinion, which affirmed the trial court's decision based upon MCR 2.116(C)(8), and remanded this case for consideration under MCR 2.116(C)(7). *El-Khalil v Oakwood Health Care, Inc*, __ Mich __; __ NW2d __ (2019). We again affirm.

In our prior opinions, we summarized the relevant facts as follows:

Plaintiff, a podiatrist, began employment with defendant Oakwood Hospital Dearborn as a staff physician on May 27, 2008. He ended his staff employment in June 2011, at which time he entered into contracts, in the form of bylaws of medical staff, with the defendant medical facilities as an independent physician, obtaining staff privileges at Oakwood Annapolis Hospital, Oakwood Heritage Hospital, Oakwood Hospital and Medical Center, and Southshore

-1-

Medical Hospital. Every year plaintiff, like all other independent physicians, was required to request reappointment and be re-credentialed for the following year. Plaintiff worked without incident, obtaining reappointments and being re-credentialed over the next few years, building his practice.

In 2014, plaintiff allegedly obtained information about certain physicians at Oakwood Hospital and Medical Center engaging in illegal activities (healthcare fraud and professional negligence). According to plaintiff, when he confronted them and reported the actions to proper authorities, defendants retaliated against him by initiating an administrative agency proceeding against him which resulted in plaintiff having to take anger management classes. In August 2014, plaintiff initiated legal action against the defendants for violation of the civil rights act (race discrimination) and for tortious interference with an advantageous business relationship, based upon the allegations that defendants had made against him and which had resulted in the administrative agency proceeding. These claims were dismissed on defendants' summary disposition motion, the trial court having found that defendants were statutorily immune from liability and that plaintiff failed to state a discrimination claim under the civil rights act. Plaintiff filed a delayed application for leave to appeal that decision with this Court, which we denied.[1]

Plaintiff filed the instant action in June 2015, asserting that since the time he initially sued defendants, they have continued to engage in actions attempting to prevent plaintiff from practicing at Oakwood Dearborn and Oakwood Southshore. According to plaintiff, he in fact received correspondence from the Chiefs of Staff of those facilities, defendants Boyes and Nasir, indicating that his staff privileges at those locations would expire in June 2015 even though his privileges were not set to expire until November 2015. The correspondence further indicated that the medical executive committees of the facilities had recommended that plaintiff not be reappointed to the medical staffs. Plaintiff thus asserted claims of breach of contract and retaliation in violation of the civil rights act.

Defendants moved for summary disposition pursuant to MCR 2.116(C)(7) and (8). They argued that plaintiff's staff privileges were set to expire in June 2015 and that the executive committee decided not to renew his privileges such that there was no breach of contract. Defendants additionally argued that there was no breach of contract because the bylaws signed by plaintiff and defendants did not constitute a contract, that the breach of contract claim was barred by release and that defendants were entitled to qualified immunity. As to the civil rights claim, defendants asserted that plaintiff failed to set forth a prima facie case

---

[1] *El–Khalil v Oakwood Health Care Systems, Inc*., unpublished Order of the Court of Appeals, entered January 8, 2016 (Docket No. 328569).

of retaliation and, because there is a statutory ban on disclosure of peer review information, plaintiff could not obtain discovery to support his claim. The trial court granted defendants' motion. The trial court found that the bylaws were an enforceable contract but that the documents submitted by the parties indicate that plaintiff's most recent appointment term was set to expire on June 25, 2015, not in November 2015 as plaintiff claims. Thus, defendants did not terminate plaintiff's appointment term. The trial court further found that defendants' failure to renew plaintiff's appointment was not a breach of contract, as the allegations relied upon by defendants in making their decision relate directly to plaintiff's ability to provide efficient and quality care and plaintiff provided no evidence that the peer review was a sham. The trial court further found that plaintiff released defendants from liability under the bylaws because plaintiff offered no support for his allegations of malice and bad faith. The trial court found that defendants followed the guidelines set forth in the bylaws and were entitled to qualified immunity under the Health Care Quality Improvement Act and the Michigan Peer Review Immunity Statute. Finally, the trial court found that plaintiff failed to state a claim for retaliation in that, essentially, plaintiff failed to establish any causal connection between his protected activity and an adverse employment action.

Plaintiff asserts that the trial court erroneously dismissed his breach of contract claim. We disagree.

We review de novo a trial court's ruling on a motion for summary disposition. *Anzaldua v Neogen Corp*, 292 Mich App 626, 629; 808 NW2d 804 (2011). Summary disposition is appropriate under MCR 2.116(C)(7) because of release, immunity granted by law, or statute of limitations, among other things. In reviewing a decision under MCR 2.116(C)(7), "we consider all documentary evidence submitted by the parties, accepting as true the contents of the complaint unless affidavits or other appropriate documents specifically contradict it." *Bryant v Oakpointe Villa Nursing Ctr*, 471 Mich 411, 419; 684 NW2d 864 (2004). A court must consider the documentary evidence to determine whether there is a genuine issue of material fact regarding whether a valid exception under MCR 2.116(C)(7) exists. *Dextrom v Wexford Co*, 287 Mich App 406, 431; 789 NW2d 211 (2010). "If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of the facts, the question whether the claim is barred is an issue of law for the court." *Id*. We review de novo questions of law. *Kessler v Kessler*, 295 Mich App 54, 57; 811 NW2d 39 (2011).

In his first amended complaint, plaintiff asserted that defendants breached the bylaws by suspending his staff privileges prior to their November 2015 expiration without the required notice and without following the specifically required procedure for suspending privileges. Plaintiff alleged that "Defendants have breached the Bylaws by failing to follow proper procedures and prematurely ending Plaintiff's appointment." Plaintiff no longer claims that he was entitled to staff privileges after the June 2015 date his application for reappointment was denied. We thus need not consider plaintiff's breach of contract claim premised upon the time that his staff privileges were not renewed. In response to defendant's motion for summary disposition, plaintiff argued for the first time that defendants breached the bylaws by denying him a renewal of staff privileges for reasons other than those related to the efficient delivery of quality patient care and professional ability and judgment. Although this claim was not raised in

plaintiff's amended complaint, and is thus not a "well-pleaded allegation" that we can accept as true and or "construe [] most favorable to the nonmoving party," *Xu v Gay*, 257 Mich App 263, 266; 668 NW2d 166 (2003), because the Supreme Court has directed that we address plaintiff's breach of contract claim pursuant to MCR 2.116(C)(7), we will do so.

The bylaws, attached to plaintiff's complaint, set forth, in part, the following as basic qualifications for membership:

> A. Basic Qualifications. Only Practitioners who can demonstrate their character, health, experience, training, demonstrated current professional competence, judgment, adherence to the ethics of their profession, *and ability to work cooperatively with others*, such that the Medical Staff and the Board are assured that they will furnish quality care in a manner that promotes a safe, *cooperative and professional* health care environment, shall be eligible for Medical Staff membership. (emphasis added) [Article II-Medical Staff Membership, Section 2-Qualifications for Membership]

Article II, Section 2, subsection C of the Bylaws further provides that membership or particular clinical privileges will not be denied "on the basis of any criteria unrelated to the efficient delivery of quality patient care in the hospital, to professional ability and judgment, or to the community need." Article II, Section 2, subsection D requires any physician appointed or employed by the hospital to apply for medical staff membership before the appointment or employment is binding.

Plaintiff was required to complete a credentialing process set forth in Article II, Section 7 of the bylaws on a yearly basis in order to obtain reappointment. The reappointment process included an evaluation of, among other things, the member's professional performance and judgment, professional ethics and conduct, including compliance with the bylaws, rules, medical staff policies, and ability to work cooperatively with others at the hospital. Plaintiff requested reappointment in 2015, but his application was denied and plaintiff claimed in his response to defendants' motion for summary disposition that the denial of his appointment was in violation of Article II, Section II, C. of the bylaws and thus a breach of the parties' contract. Plaintiff asserted that defendants breached the bylaws by denying him a renewal of staff privileges for reasons other than those related to the efficient delivery of quality patient care and to professional ability and judgment. Defendants, on the other hand, asserted that plaintiff released them from any liability arising out of the denial of reappointment.

Before delving into whether the release applies, we first find that how a doctor interacts with staff may serve as the basis for a reasonable belief that the quality of health care is being affected, regardless of his or her record as a doctor in general, as stated in our prior opinion, and we readopt the analysis in our prior opinion concerning this issue. *El-Khalil v Oakwood Health Care Inc*, unpublished per curiam opinion issued by the Court of Appeals April 17, 2018 (Docket No. 329986), reversed on other grounds, *El-Khalil v Oakwood Healthcare, Inc*, __ Mich __; __NW2d __ (2019). The allegations relied upon by defendants in making their decision relate directly to plaintiff's ability to provide efficient and quality care.

The release, set forth in Article II, Section 3 of the Bylaws, provides:

All staff members and applicants shall be required to agree that the submission of an application (whether an original application or an application for reappointment) constitutes the following:

\* \* \*

5. The applicant or staff members agreement to release the Hospital, its agents and employees, and all members of the Governing Board, Administration, and Medical Staff from all liability for any statements made or any action taken in good faith and without malice by any person in connection with the consideration of this or any other application, in connection with any proceedings for reappointment, advancement, denial, or rescission of appointment, reduction, suspension or termination of privileges, or transfer to any other division of the Medical Staff, pursuant to this or any other application for appointment, and in connection with any other form of review of the professional practices of Medical Staff members in the Hospital.

Plaintiff does not argue that the release is ambiguous or inapplicable on its face. Rather, plaintiff alleges that the denial of his reappointment was not made in good faith and was made with malice so that the above release of liability is inapplicable. We disagree.

"Good faith" is defined in Black's Law Dictionary (11th ed.), in part, as "(1) a state of mind consisting in honesty in belief or purpose, (2) faithfulness to one's duty or obligation." "Bad faith" is defined in Black's Law Dictionary (11th ed.) as "dishonesty of belief, purpose, or motive." "Malice" is defined in Black's Law Dictionary (11th ed.) as "the intent, without justification or excuse, to commit a wrongful act," and in Merriam-Webster's Collegiate Dictionary (11th ed.) as a "desire to cause pain, injury, or distress to another." Thus, for the release to be inapplicable, plaintiff must allege and establish that defendants' denial of his reappointment was made with a dishonest belief, purpose, or motive, and with a desire to cause plaintiff pain, injury, or distress.

Plaintiff asserts that defendants failed to renew his staff privileges in retaliation for the civil rights violation lawsuit he filed in August 2014[2] and because he did not "play well" with

---

[2] A copy of the August 2014 complaint was attached to defendants' motion for summary disposition and shows that plaintiff brought suit against Oakwood Healthcare Systems, Inc., Dr. Henoch, Dr. Housner, Dr. Boyes, Dr. Guslits, Dr. Ringold, and Weingarten. Plaintiff's claims were for racial discrimination, defamation, and tortious interference with a business relationship. Plaintiff alleged, in part, that several of the defendants were jealous and felt threatened by plaintiff's successful practice and thus filed false complaints against him involving anger management issues. Plaintiff alleged that the filing of the false complaints resulted in Oakwood requiring him to attend an anger management program. The trial court granted defendants' motion for summary disposition, dismissing all claims (except one claim alleging defamation against one doctor), in a November 21, 2014 order.

other doctors. We are to accept these allegations[3] as true, and construe them most favorable to plaintiff, "unless specifically contradicted by documentary evidence." *Gay*, 257 Mich App at 266. Attached to plaintiff's amended complaint was a May 5, 2015 letter from the medical staff peer review committee which indicated that plaintiff failed to comply with the requirements of a focused physician practice evaluation and was required to attend the next committee meeting to discuss certain things. Plaintiff also attached to his complaint an undated letter from Dr. Zakaria wherein Dr. Zakaria stated he was filing a formal complaint against plaintiff because of plaintiff's statements that made Dr. Zakaria feel unsafe, as well as a February 5, 2015 letter detailing an encounter between plaintiff and another doctor wherein plaintiff acted in a "threatening" manner. In addition, plaintiff attached a March 31, 2015 incident report detailing Dr. Fong's interaction with plaintiff on that date and plaintiff's reported rude and disrespectful behavior and plaintiff's reaction in stating Dr. Fong had committed Medicare fraud. Plaintiff additioally attached to his complaint text messages from plaintiff telling Dr. Mukherjea to stop aggressive action toward plaintiff or he would seek legal advice and advising that plaintiff was filing a grievance with Medicaid concerning Dr. Mukherjea. Plaintiff further attached a May 13, 2015 letter he wrote in response to the complaints made against him by other doctors. In that letter, plaintiff indicated that Dr. Zakaria had a motive to make up allegations against him, that he did not act in a threatening manner toward any doctor, that Dr. Fong had a long history of bias against plaintiff, and that Dr. Mukherjea had personal issues with plaintiff and did not want plaintiff to see a patient because plaintiff was in a lawsuit against the medical executive committee. Plaintiff further stated in his responsive letter that he believed the complaints were filed against him as part of an organized plan by Elaine Weingarten and Malcom Henoch due to their racial prejudice and because he filed a lawsuit against them. Plaintiff also attached to his complaint the June 16, 2015 letter to him from the medical executive committees informing him that he would not be reappointed due to incidents reported by five members of the staff concerning plaintiff's threatening behavior and/or verbal abuse of them, and based on an "identified pattern of past unprofessional and disruptive behavior" by plaintiff. Finally, plaintiff provided a March 2015 memo from a senior medical staff coordinator indicating that plaintiff had been the subject of disciplinary action related to his professional behavior and that, "to date, [plaintiff] has been compliant with all requirements of the disciplinary action.

The May 5, 2015 letter from the medical staff peer review committee, the complaints by other doctors, and the memo actually provide support for defendants' assertion that plaintiff's reappointment was denied due to complaints from five physicians at the medical facility as well as other behaviors engaged in by plaintiff. Plaintiff's May 13, 2015 letter written in response to the complaints, on the other hand, indicates that the complaints may have been made falsely. If the complaints were, in fact, falsely made, plaintiff would have a tenable argument that the complaints were made with a dishonest belief, purpose, or motive, and with a desire to cause plaintiff pain, injury, or distress. Significantly, however, plaintiff did not bring suit against any of the persons who made the allegedly false statements against him. Instead, plaintiff has sued Oakland Healthcare, Inc., Oakwood Hospital Southshore, Oakwood Hospital Dearborn, Dr. Boyes (Chief of Staff at Oakwood Hospital Dearborn), and Dr. Nasir (Chief of Staff at Oakwood

---

[3] As previously indicated, these allegations did not appear in plaintiff's complaint.

Hospital Southshore). Plaintiff's current breach of contract allegation is that these defendants violated the bylaws by failing to renew his staff privileges. In order to succeed on his claim and avoid the release provision contained in the bylaws, plaintiff must allege and establish that *these defendants* made a statement or took action on his reappointment request without good faith and with malice. Plaintiff has not done so, or argued that defendants accepted the allegedly false complaints made by other doctors while knowing or believing they were false.

Good faith involves a state of mind. Plaintiff provided a written response, with explanations and information, concerning the five recent complaints against him. While the written response provides plaintiff's opinion concerning the state of mind of the complaining doctors, it does not follow that any particular state of mind held by those doctors when making the purportedly false complaints was also the same state of mind held by *defendants*. At most, plaintiff asserted in his response to defendants' motion for summary disposition that "it appears that the Defendants conducted a sham peer review to remove [him] from the hospital because he did not 'play well' with others." Plaintiff alleges, without providing any support, that defendants wanted to get rid of him because he reported the illegal and fraudulent activities of several physicians to state and federal law enforcement authorities and in retaliation for his 2014 lawsuit. Defendant, however, has provided evidence refuting this allegation in the form of affidavits and other documentary evidence.

In support of their position that defendant was not reappointed because of complaints against him and his behavior, defendants submitted an affidavit of Elaine Weingarten, the administrative director for Oakwood Healthcare, Inc. Weingarten swore in the affidavit that she is not a doctor, and that her job is to provide logistical and administrative support to the physicians and committees involved in the credentialing and other peer review activities in Oakwood hospitals. Weingarten swore that the Dearborn medical executive committee is comprised of 21 physicians and received recommendations from the Oakwood-Dearborn credentials committee and Oakwood's medical staff professional review committee to deny plaintiff's reappointment. The Dearborn medical executive committee voted to deny plaintiff's reappointment. Weingarten swore that both the credentials committee and executive committee had information concerning numerous complaints about plaintiff's behavior available to them and that the professional review committee considers complaints and possible disciplinary issues regarding physicians and was well-acquainted with plaintiff. Weingarten swore that the Southshore medical executive committee is comprised of 11 members who voted to deny plaintiff's reappointment and that the Wayne medical executive committee also voted to deny plaintiff's reappointment.

Defendants also attached the affidavit of Dr. Roderick Boyes, a physician and the Chief of Staff at Oakwood-Dearborn. Dr. Boyes swore that Oakwood-Dearborn medical staff office has received numerous complaints about plaintiff over the past several years, including from doctors reluctant to practice at the hospital due to plaintiff's behaviors. Dr. Boyes attested that plaintiff has been the subject of multiple medical staff committee meetings and processes and the complaints over many years led him to conclude that the effective working environment at Oakwood-Dearborn would be substantially disrupted and compromised if plaintiff were allowed to continue practicing there. Dr. Boyes swore that he chairs the Dearborn medical executive committee and was there when that committee voted to deny plaintiff's reappointment.

Plaintiff has provided nothing by way of documents or evidence to refute the documentary evidence specifically contradicting his claims of bad faith and malice or his claims that defendants violated his civil rights under the Elliott Larsen Civil Rights Act, MCL 37.2101 *et seq*. Moreover, plaintiff does not allege or show that Dr. Boyes and Dr. Nasir were the ones who made the ultimate decision regarding his reappointment. The unrefuted evidence indicates that the Oakwood Dearborn Hospital medical executive committee consists of 21 members and the Oakland Southshore Hospital medical executive committee consists of 11 members. Presumably, more than one member would have to vote against plaintiff's reappointment for such a decision to be ultimately made. Because defendants have provided unrefuted documentary evidence supporting their position that the failure to reappointment plaintiff was not done with malice, based on bad faith, or in retaliation for plaintiff's filing of a prior lawsuit[4], we are not required to accept the contrary bare allegations by plaintiff as true. See, *Oakpointe Villa Nursing Ctr*, 471 Mich at 419. Our consideration of the documentary evidence leads to a conclusion that there is no genuine issue of material fact that the release is valid and applies. Summary disposition was thus proper in favor of defendants.

Although we find that summary disposition was appropriate in defendants' favor based upon application of the release under MCR 2.116(C)(7), we also find that defendants were entitled to immunity with respect to plaintiff's breach of contract claim.

The Michigan Public Health Code requires that hospitals organize their physicians into a medical staff "to enable an effective review of the professional practices in the hospital . . . . The review shall include the quality and necessity of the care provided and the preventability of complications and deaths occurring in the hospital." MCL 333.21513(d). "Essential to the peer review process is the candid and conscientious assessment of hospital practices." *Krusac v Covenant Med Ctr, Inc*, 497 Mich 251, 256; 865 NW2d 908 (2015). To that end, the Michigan Legislature provides that documents and knowledge collected or used in the review process are confidential: "[t]he records, data, and knowledge collected for or by individuals or committees assigned a professional review function in a health facility or agency, or an institution of higher education in this state that has colleges of osteopathic and human medicine, are confidential, shall be used only for the purposes provided in this article, are not public records, and are not subject to court subpoena." MCL 333.20175(8); see also, MCL 333.21515. Also to that end, MCL 331.531(3) provides that a "person, organization, or entity is not civilly or criminally liable for providing information or data" to a review entity concerning the qualifications, competence, or performance of a health care provider, or for an act or communication within its scope as a review entity. This immunity does not, however, apply to a person, organization, or entity that acts with malice. MCL 331.531(4). "Our Legislature also protects specific 'review entities,' such as a duly appointed peer review committee of a hospital, for those acts or communications

---

[4] To the extent necessary, we also adopt the analysis set forth in our prior opinion concerning the lack of documentary support to establish a causal relation between the failure to reappointment plaintiff and the filing of the 2014 lawsuit. *El-Khalil v Oakwood Health Care Inc*, unpublished per curiam opinion issued by the Court of Appeals April 17, 2018 (Docket No. 329986), reversed on other grounds, *El-Khalil v Oakwood Healthcare, Inc*, __ Mich __; __NW2d __ (2019).

within its scope as a review entity." *Feyz v Mercy Mem Hosp*, 475 Mich 663, 682; 719 NW2d 1 (2006). Again, however, the review entity is not entitled to immunity if it acts with malice. *Id*. "Malice," for purposes of immunity in the above contexts is the "utilizing and acting on information known to be false." *Id*. at 687.

Similarly, the Public Health Code, at 42 USC 11111(a)(1), provides immunity to professional review bodies, persons acting as staff to the bodies, persons under contract or formal agreement with the bodies, and any person who participates with or assists the bodies with their actions (but does not apply to damages relating to civil rights). 42 USC 11111(2) provides immunity to persons providing information to a professional review board, unless the information is false and the person providing the information knew it was false.

As previously stated, plaintiff has provided no evidentiary support for his claims that defendants acted with malice, nor has he provided any evidence that Dr. Boyes or Dr. Nadir relied upon information they knew to be false. Looking at the evidence provided, there is no question of material fact that defendants followed the Bylaws and guidelines with respect to the review process and are thus entitled to qualified immunity under the provisions set forth above with respect to plaintiff's breach of contract allegations.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Deborah A. Servitto
/s/ Douglas B. Shapiro