*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BRIAN DEAN, D.O.,

      Plaintiff/Counterdefendant-
      Appellant,

v

ST. MARY'S OF MICHIGAN,

      Defendant/Counterplaintiff-
      Appellee.

UNPUBLISHED
January 23, 2020

Nos. 345213; 345374
Saginaw Circuit Court
LC No. 17-033584-CK

Before: BOONSTRA, P.J., and TUKEL and LETICA, JJ.

PER CURIAM.

Plaintiff, a physician formerly employed by defendant hospital, appeals[1] as of right the trial court's orders granting summary disposition in favor of defendant and denying in part his motion for reconsideration. We affirm.

## I. FACTS

The trial court's order granting summary disposition includes a summary of some of the facts underlying this case:

> Around January 14, 2016, Plaintiff was employed by Defendant as an emergency room physician. During the course of Plaintiff's employment, Plaintiff notified Defendant of activities the Plaintiff believed to be alleged malpractice and that he was not "liked" which he claimed exhibited an alleged animosity towards him. On July 19, 2016, Plaintiff was notified of termination of

---

[1] We note that defendant's challenge to our jurisdiction is misplaced because whether plaintiff raised an issue that was decided below bears on issue preservation and the applicable standard of review, not on our appellate jurisdiction.

his employment for cause. The termination letter stated Plaintiff violated Sections 2.6.3, 2.6.4, and 3.2.3 of his employment agreement with Defendant and that he breached several of the bylaws, Plaintiff also alleges that defamatory letters started after he refused to repay his "sign-on" bonus.

After the termination, Plaintiff states that Defendant continued to retaliate against him by making defamatory statements to various potential employers. Plaintiff also claims that Defendant falsely related information to two hospitals, stated that Plaintiff violated federal and Michigan statutes, failed to abide by the bylaws, rules, and regulations; and lastly, that Plaintiff failed to perform his duties in accordance with the standard of care.

When defendant terminated plaintiff's employment and staff privileges before expiration of the contractual term, plaintiff commenced this action, claiming breach of contract, breach of bylaws, defamation, and violation of public policy. Defendant filed a counterclaim for repayment of plaintiff's signing bonus, alleging breach of contract, unjust enrichment, claim and delivery, and common-law and statutory conversion. After both parties filed cross-motions for summary disposition, the trial court granted defendant's motion and ordered plaintiff to repay his full signing bonus. Plaintiff filed a motion for reconsideration that the trial court granted in part, reducing the amount he was required to pay to defendant, but otherwise denied. This appeal follows.

## II. EVIDENTIARY ISSUES

Plaintiff argues that the trial court erred by denying his discovery request for certain documents defendant resisted disclosing as peer-review materials and his request to submit an additional deposition after the cross-motions for summary disposition were argued and decided. We review a trial court's evidentiary rulings for an abuse of discretion. *Price v Long Realty, Inc*, 199 Mich App 461, 466; 502 NW2d 337 (1993). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008).

## A. PEER-REVIEW MATERIALS

On appeal, plaintiff provides little information about the documents at issue. He asserts that they were created after he was terminated and that all but one of the documents' authors "were not part of a peer review committee." Plaintiff does, however, refer to his request for production below, in which he described many documents and referred to an earlier request for "all peer review materials related to Plaintiff." In responding to the motion, defendant noted that it had generally complied with plaintiff's discovery requests, but not the one for peer-review materials because those materials were absolutely privileged. The trial court reviewed the documents at issue *in camera* and announced on the record its finding that they were peer-review materials and thus privileged from disclosure.

We review "de novo as a question of law the applicability of a privilege." *Denhof v Challa*, 311 Mich App 499, 510; 876 NW2d 266 (2015) (quotation marks omitted). We review any attendant factual findings for clear error. MCR 2.613(C).

MCL 333.21513(d) requires the "owner, operator, and governing body" of a licensed hospital to organize its "medical staff to enable an effective review of the professional practice in the hospital for the purpose of reducing morbidity and mortality and improving the care provided in the hospital for patients." MCL 333.20175(8) states that "[t]he records, data, and knowledge collected for or by individuals or committees assigned a professional review function in a health facility or agency . . . are confidential, shall be used only for the purposes provided in this article, are not public records, and are not subject to court subpoena."

In *Krusac v Covenant Med Ctr*, 497 Mich 251, 257-263; 865 NW2d 908 (2015), our Supreme Court recognized that the statutory privilege protecting peer-review materials extended to administrative and criminal investigations, and overruled extant caselaw to extend coverage to objective facts that may be presented within peer-review materials.

Plaintiff cites *Krusac*, 497 Mich at 260, for the proposition that only records that are created by peer-review committees are protected. However, although much of the discussion in *Krusac* is indeed directed toward "peer review committees," the Supreme Court also clarified that, for purposes of that case, it would "use 'peer review committee' to refer generally to '*individuals* or committees assigned a professional review function' under MCL 333.20175(8) and '*individuals* or committees assigned a review function' under MCL 333.21515." *Krusac*, 497 Mich at 257 n 1 (emphasis added). Thus, plaintiff's argument, that some of the materials sought might have been the work product other than of an actual peer-review committee, is unavailing here.

Plaintiff also asserts that defendant did not apply its own statutorily required bylaws to his situation and argues that this demonstrates that peer-review operations were not involved. However, plaintiff does not explain why any given deviation from normal operational policy or duty would undercut the status of peer-review materials. Further, our Supreme Court in *Krusac* rejected any suggestion that any failure of the defendant's duty "to publish certain information in the medical record should be deemed a waiver," on the ground that "deeming the peer review privilege waived is not among the sanctions provided by the Legislature for violations of § 20175(1)." *Id*. at 262 n 9.

As noted, the trial court ruled against disclosure of these documents only after examining them. This action complied with *Krusac*, in which the Supreme Court noted its approval of the practice of having the trial court examine requested materials *in camera* to determine if they are privileged. *Id*. at 254-255, 258. But the results of such off-the-record investigation and fact-finding are not entirely present on the record.

We also decline plaintiff's request for us to engage in our own *in camera* review of the subject documents, as plaintiff's legal arguments regarding the status of the privileged documents are meritless. Thus, we affirm the trial court's determination that the documentation plaintiff sought here was not subject to disclosure because it was privileged peer-review material.

B. SUPPLEMENTAL EXHIBIT

The trial court entered a scheduling order setting a trial date and stating that motions for summary disposition "shall be timely filed and heard before the Court no later than 60 days

-3-

before trial." The trial court heard the parties' cross-motions for summary disposition four days before that deadline. Two days later, plaintiff moved to file the transcript of the deposition of plaintiff's physician colleague as a supplemental exhibit. Plaintiff's counsel stated that the deposition was taken the same day that plaintiff filed his response to defendant's motion for summary disposition. Defendant's counsel objected. The trial court determined that it would not consider the deposition because "the motion for summary disposition was heard, and that all documents were to be provided within a certain time period," but "weren't provided within a certain time period."

In his motion below, plaintiff cited MCR 2.116(G)(1)(a)(iv), which in turn states that "no additional or supplemental briefs may be filed without leave of the court." Plaintiff, perhaps recognizing that this rule refers to briefs, not depositions or other late-offered evidence, cited this authority for the proposition that courts have the inherent authority to limit and thus allow the presentation of evidence. However, defendant does not dispute that the trial court had the discretion to excuse the poor timing and accept the deposition; instead, defendant argues that the court did not abuse its discretion in declining to do so in this instance. Further, plaintiff does not suggest that the court was unaware of its ability to exercise its discretion in favor of accepting the deposition. Even so, plaintiff notes that discovery was still open at the time the deposition was taken. However, just as specific statutory provisions trump related general ones,[2] the trial court's specific timing limitations relating to motions for summary disposition covered the offering of evidence for that purpose, even if discovery remained open for other purposes. Plaintiff otherwise points out that his counsel below "explained to the Circuit Court that the transcript was not available at the time of filing of the response to the motion for summary disposition." Neither explanation suggests that counsel offered specific reasoning below why plaintiff could not have timely offered a transcript of a deposition taken in response to a motion filed 21 days before it was heard—or, at least, asked to delay the hearing for that reason—nor offers to supply the lack of specific reasoning on appeal.

Plaintiff thus fails to demonstrate that the trial court misunderstood its prerogatives here and that it misapplied the ordered scheduling particulars. Furthermore, plaintiff makes only general assertions that the new deposition would have helped him oppose defendant's motion for summary disposition. He fails to specify in his motion and supporting brief below or in his appellate brief, how that testimony would have served that purpose or explain why the trial court should have regarded it as sufficiently compelling to justify excusing plaintiff's untimeliness. We conclude that this lack of argument abandons any claim of error. *Houghton v Keller*, 256 Mich App 336, 339-340; 662 NW2d 854 (2003) ("An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue."). Alternatively, plaintiff fails to demonstrate that any error affected the outcome here. *Barnett v Hidalgo*, 478 Mich 151, 172; 732 NW2d 472 (2007) (stating that reversal was not required over a preserved nonconstitutional error where the appellant "failed to show that it was more probable than not that the alleged error was outcome determinative").

---

[2] See *Gebhardt v O'Rourke*, 444 Mich 535, 542-543; 510 NW2d 900 (1994).

For these reasons, we reject this claim of error.

## III. PUBLIC-POLICY CLAIM

Plaintiff argues that the trial court erred by dismissing his public-policy claim as preempted by the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq.*

We review a trial court's decision on a motion for summary disposition de novo. *Ford Credit Int'l, Inc v Dep't of Treasury*, 270 Mich App 530, 534; 716 NW2d 593 (2006). "A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a claim by the pleadings alone. This Court reviews de novo a trial court's decision regarding a motion for summary disposition under MCR 2.116(C)(8) to determine whether the claim is so clearly unenforceable as a matter of law that no factual development could establish the claim and justify recovery." *Smith v Stolberg*, 231 Mich App 256, 258; 586 NW2d 103 (1998). In reviewing a trial court's decision on a (C)(8) motion, we accept as true all factual allegations supporting the claim and reasonable inferences that may be drawn from them. *Id.*

At-will employment relationships may generally be terminated at any time, with or without cause, meaning for any reason or no reason. *Suchodolski v Mich Consol Gas Co*, 412 Mich 692, 694-695; 316 NW2d 710 (1982). "However, an exception has been recognized to that rule, based on the principle that some grounds for discharging an employee are so contrary to public policy as to be actionable." *Id.* at 695. Our Supreme Court has noted that such public-policy grounds for actionable wrongful termination are usually set forth in statutory prohibitions of adverse employment actions against "employees who act in accordance with a statutory right or duty," but also recognized where the adverse action is in response to an employee's "refusal to violate a law in the course of employment," or "exercise of a right conferred by a well-established legislative enactment." *Id.* at 695-696.

We have held that, in light of our Supreme Court's reliance on legislative enactments in recognizing public-policy bases for wrongful termination actions, "where a statute confers upon a victim of retaliation the right to sue, that person may not also assert a claim of discharge in violation of public policy . . . ." *Vagts v Perry Drug Stores, Inc*, 204 Mich App 481, 485; 516 NW2d 102 (1994).

The WPA prohibits retaliatory employment action against an employee "because the employee . . . reports or is about to report . . . a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false . . . ." MCL 15.362. "It is the general rule in this state that when a statute creates a new right or imposes a new duty having no counterpart in the common law, the remedies provided in the statute for its violation are exclusive and not cumulative." *Shuttleworth v Riverside Osteopathic Hosp*, 191 Mich App 25, 27; 477 NW2d 453 (1991). "[N]o common-law counterpart existed before passage of the WPA and . . . , therefore, the act is the exclusive remedy for an employee whose employment is terminated in retaliation for reporting an employer's violation of the law. *Id.* (citation omitted).

"The WPA protects an employee who reports or is about to report a violation or suspected violation of a law or regulation *to a public body*." *Brown v Mayor of Detroit*, 478 Mich 589, 594; 734 NW2d 514 (2007). For this purpose, MCL 15.361(d) broadly defines "public body" to cover various officials or agencies of state or local government, with its subparagraph (*iv*) adding "[a]ny other body which is created by state or local authority or which is primarily funded by or through state or local authority, or any member or employee of that body."

Plaintiff did not invoke the WPA below, and maintains on appeal that he does not have an actionable WPA claim because he does not assert that he reported misconduct to anyone other than defendant itself. And, as defendant is a private hospital, it is not a public body for purposes of authorizing a cause of action under the WPA. Instead, plaintiff specifically argues that WPA preemption does not apply to the specific facts of his case. Defendant responds, not that it constituted a public body for purposes of the WPA, but instead asserts that all public-policy claims stemming from allegations of employer retaliation are preempted by the WPA, regardless if the specific facts would give rise to a remedy under the WPA. Thus, the parties disagree on whether the WPA preempts only those claims for which the WPA provides a cause of action, or whether the WPA generally preempts all public-policy based employer retaliation claims, including those for which the WPA offers no remedy. We agree with defendant.

In *Wurtz v Beecher Metro Dist*, 495 Mich 242, 248; 848 NW2d 121 (2014), our Supreme Court noted that the trial court dismissed a public-policy claim on the ground that "the WPA provided the exclusive avenue of relief," then concluded that the plaintiff "could not satisfy all of the WPA's elements," while implying no inconsistency in finding that the WPA provided the exclusive remedy even where the facts did not trigger its applicability. The Court then affirmed on the ground that "the WPA does not apply when an employer declines to renew a contract employee's contract." *Id.* at 249. The Court did not suggest that the claim might remain actionable on public-policy grounds despite the inapplicability of the WPA. Indeed, the Court stated that "[t]he WPA's language governs this case without any additional judicial interpretation" and reiterated that the WPA did not apply to the plaintiff's status as one seeking renewal of an employment contract. *Id.* at 257. The Court's recognition that the public-policy claim below was dismissed for failing to trigger the WPA's protections, coupled with its assertion that the WPA still governed the matter, indicates that the WPA is the exclusive avenue for redressing retaliatory employment actions. This is true whether or not the WPA provides a remedy for the specific forms of, or reasons for, retaliation in a given case.

Accordingly, we affirm the trial court's dismissal of plaintiff's public-policy claim.

IV. CONTRACT CLAIM

Plaintiff argues that in granting defendant's motion for summary disposition the trial court erred by crediting defendant's position that it terminated plaintiff for cause. "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004).

A written Physician Employment Agreement executed in January 2016 governed the relationship between the parties. Section 3.2.3(a) of the agreement provided that defendant "may immediately terminate this Agreement" if plaintiff "ceases to satisfy any requirement stated in Section 2.6." The latter included the following:

> 2.6.3 maintain membership in and abide by the bylaws, rules, and regulations of the Medical Staff of St. Mary's as are necessary for performance of Physician's services;
>
> 2.6.4 abide by all applicable state and federal statutes and regulations and standards of accrediting and certifying bodies, and cannons of professional ethics, as each may be amended . . . .

Section 3.3.2 provided that should the agreement be terminated, for any reason, "Physician's medical staff privileges shall automatically terminate without the right of appeal."

Section 4.2 provided for a signing bonus:

> Upon Physician becoming fully credentialed with St. Mary's and St. Mary's' primary third party payors (as determined in the sole discretion of St. Mary's) and full execution of this Agreement, St. Mary's shall pay Physician a signing bonus of Thirty Thousand and 00/100 Dollars ($30,000.00) ("Signing Bonus"). Physician agrees that should he or she fail to fulfill any of her obligations under this Agreement, and St. Mary's terminates this Agreement with cause pursuant to Section 3.2.2 or Section 3.2.3 during the first twelve (12) months of this Agreement, or Physician voluntarily terminates this Agreement without cause during the first twelve (12) months of this Agreement, the Signing Bonus amounts received by Physician shall be repaid to St. Mary's in full within thirty (30) days of terminating h[is] employment; provided, however, that 1/12th of the Signing Bonus shall be deemed forgiven for each full month that Physician performs duties and fulfills her obligations under this Agreement (e.g., if Physician is employed by St. Mary's for six months, one-half of the Signing Bonus repayment obligation is forgiven). . . .

Paragraph 11 spelled out that the agreement "constitutes the entire agreement of the parties concerning the subject matter hereof and supersedes all previous representations, understandings and agreements of the parties, whether oral or written, concerning the same," and "may only be modified, altered, amended, revised or extended by a written document signed by the parties herein."

The trial court explained its decision on the contract claims as follows:

> [T]he contract provided to Plaintiff . . . stated within that Defendant could terminate Plaintiff for two reasons; first being without cause by providing Plaintiff with 90 days advanced written notice or second, that Plaintiff could be

terminated immediately if Plaintiff failed to satisfy any requirements stated in Section 2.6 of the agreement.

Here, Plaintiff did not need 90 days' notice because St. Mary's had cause to terminate without giving notice. The cause is justified from the multiple employees and patients complaints and the treatment Plaintiff was providing to the patients. Here, Plaintiff doesn't even contest that multiple claims were filed against him, that they were investigated and discussed with him. Therefore, because Plaintiff did violate the contract, Defendant did have cause to terminate him, even without the 90 days' notice.

The trial court initially ordered that plaintiff repay the entire $30,000 signing bonus, but, on plaintiff's motion for reconsideration, reduced the obligation to $20,000. Plaintiff was thus held to repay a prorated portion of that bonus. However, he implicitly argues that he should be allowed to retain the entire bonus on the ground that defendant terminated him without cause.

In wrongful discharge cases, generally the trier of fact decides whether the employee was discharged for cause. See *Toussaint v Blue Cross & Blue Shield*, 408 Mich 579, 620-624; 292 NW2d 880 (1980). But where a party moving for summary disposition supports the motion with documentary evidence, the opposing party may not rest on mere allegations or denials in that party's pleadings, but must offer evidence to establish the existence of a genuine issue of material fact. MCR 2.116(G)(4); see also *Reed v Reed*, 265 Mich App 131, 141; 693 NW2d 825 (2005). "Circumstantial evidence can be sufficient to establish a genuine issue of material fact, but mere conjecture or speculation is insufficient." *McNeill-Marks v Midmichigan Med Ctr*, 316 Mich App 1, 16; 891 NW2d 528 (2016).

In this case, defendant offered an affidavit from a nurse manager of its emergency department, in which the latter attested to having personally observed plaintiff insulting and threatening patients, reporting work he had not performed, and instructing staff without rationale to send all waiting emergency-room patients home. According to this witness, plaintiff's improper interactions with patients twice resulted in the involvement of security personnel. This witness additionally reported that he once referred plaintiff to a call from defendant's pharmacy concerning a patient with a documented allergy to a prescribed medication. Plaintiff "cursorily" retorted that "he was 'the doctor' and did not care about the Pharmacy Department's concern." Plaintiff then "hung the phone up without addressing the concern."

The director of defendant's emergency department attested in an affidavit that he had received several complaints that plaintiff had spoken insultingly to staff and patients and refused to examine or treat patients needing attention. This witness reported that, upon his personal follow-up in one case, he concluded that plaintiff had documented conducting a full examination in a situation where he had not offered an examination or treatment.

Plaintiff asserts that evidence in support of a (C)(10) motion must be substantively admissible, *1300 LaFayette East Coop, Inc v Savoy*, 284 Mich App 522, 525; 773 NW2d 57

(2009), and that the latter witness offered hearsay.[3] However, we conclude that, to the extent that defendant provided such information, it was not to prove the truth of the matters asserted, but rather to explain why its official developed and further investigated concerns about plaintiff. Moreover, we agree with defendant that the patients' oral statements that the latter witness entertained would be excepted from the rules against hearsay as "made for purposes of medical treatment or medical diagnosis in connection with treatment," MRE 803(4), and that any written accounts may qualify as records "kept in the course of a regularly conducted business activity," MRE 803(6).

Plaintiff himself acknowledged in his deposition that defendant had to contend with numerous complaints about him. Although plaintiff has consistently denied the factual bases of those complaints, and attributed pernicious motives to some of his colleagues, he has offered nothing beyond these conclusory denials and opinions to rebut defendant's substantial evidence implicating him in misconduct. And plaintiff's opinions concerning his colleagues' motives do not rise above mere speculation, given that plaintiff does not suggest or offer any evidence that defendant responded differently to other employees who had created similar concerns, or that defendant otherwise did not generally undertake its disciplinary measures with reasonable consistency.

For these reasons, plaintiff cannot demonstrate that the trial court erred by granting defendant's motion for summary disposition on its contract claim.

## V.  BYLAWS CLAIM

Plaintiff invoked defendant's Medical Staff Bylaws to claim that defendant denied him pretermination procedural rights in connection with the complaints against him.

Article VII of the bylaws is headed "CORRECTIVE ACTION," and sets forth grounds and procedures for addressing problems for a practitioner's performance, including for suspension and termination. Article VIII is headed "HEARING AND APPELLATE REVIEW PROCEDURE," and sets forth the avenues through which a practitioner facing adverse action may respond, including a hearing and internal appellate review. Plaintiff asserts that defendant failed to abide by the bylaws because it failed to provide him with notice of the particulars deemed to require corrective action, failed to engage the Medical Executive Committee, failed to involve an ad hoc committee, and failed to provide plaintiff with a hearing or appellate opportunities.

Defendant does not assert that all of the procedures set forth in the bylaws were in fact followed, but emphasizes that the bylaws disclaim their having any contractual significance. In particular, ¶ 4.6.3 states that "[t]he effect of expiration or other termination of a contract upon a Practitioner's Medical Staff membership status and clinical privileges will be governed solely by

---

[3]  Hearsay, meaning testimony relating a person's unsworn, out-of-court assertions offered to prove the truth of the matter asserted, MRE 801(c), is generally inadmissible, MRE 802, subject to several exemptions and exceptions as provided by the rules of evidence, MRE 801-805.

the terms of the Practitioner's contract with the Medical Center." Paragraph 4.9 is headed "BYLAWS NOT A CONTRACT," and provides as follows:

> These Bylaws shall not be deemed as a contract of any kind between the Governing Body or the Medical Center and the Medical Staff or any individual member thereof. Applications for, the conditions of, and the duration of appointment to the Medical Staff or the granting of Clinical Privileges as a Practitioner or Allied Health Professional shall not be deemed contractual in nature since the continuance of any such privileges at this Medical Center is based solely upon a Practitioner's continued ability to justify the exercise of such privileges. The Governing Body is obligated to use fundamental fairness in dealing with Medical Staff members, Allied Health Professionals and applicants for those positions and may fulfill that obligation by following the procedures specified in these Bylaws and related documents or any other procedures which are fair in the circumstances.

The trial court did not recognize any need to determine whether defendant failed to follow any procedures set forth in its bylaws with regard to any part of plaintiff's employment, termination, or hospital privileges, on the ground that the bylaws gave rise to no enforceable procedural rights. The court's explanation of its decision to grant defendant summary disposition of the bylaws claim pertinently stated:

> Defendant's main argument is that the bylaws specifically state within that these bylaws are not a contract. The contract between Plaintiff and Defendant was clear and unambiguous[;] . . . it stated that Plaintiff had no right of appeal. Plaintiff even admits within his deposition that the bylaws specifically state they are not a contract . . . . Even within the bylaws it states in section 4.9 Bylaws not a contract . . . .

> Also pursuant to the bylaws . . . the effect of the termination of a contract is governed and subject to the "contract" with the medical center. . . .

> . . . The contractual disclaimer at issue in this case . . . clearly evidences and communicates the employer's intent not to be bound by the handbook provisions.

> Here Plaintiff's argument is that enforcing a contractual disclaimer would be against public policy. . . . The bylaws simply stated that they were not a part of the contract and Plaintiff acknowledged that.

> Therefore, based on case law, this Court finds that the bylaws were not considered a part of the contract (they defer to the terms of the employment contract), and therefore Defendant's motion is granted and Plaintiff's motion is denied.

-10-

In reaching its decision, the trial court cited *Lytle v Malady (On Rehearing)*, 458 Mich 153; 579 NW2d 906 (1998). In that case, our Supreme Court held that a "proper cause" provision in an employee handbook did not overcome the presumption of at-will employment where the handbook "provided that '[t]he contents of this booklet are not intended to establish . . . any contract between . . . [the employer] and any employee,'" and thus "clearly communicated to employees that the employer did not intend to be bound by the policies stated in the handbook." *Lytle*, 458 Mich at 166 (WEAVER, J., joined by BOYLE and TAYLOR, JJ.), 185-186 (MALLETT, J., concurring in pertinent part).

Again, ¶ 4.9 of the bylaws states that they "shall not be deemed as a contract of any kind," and also that "[t]he Governing Body is obligated to use fundamental fairness . . . and may fulfill that obligation by following the procedures specified in these Bylaws." The bylaws' disclaimer of contract status "of any kind" demonstrates that they have no legal status under any theory, including incorporation, reliance, or mutuality. The statement that the Governing Body "*may* fulfill" its obligation to be fair "by following the procedures specified" (emphasis added) underscores that the bylaws constitute mere guidelines instead of any kind of mandatory authority.

In arguing that operation of law grants the bylaws greater legal significance than their disclaimers of contract status suggests, plaintiff relies on MCL 331.6(2), which states in pertinent part:

> The [hospital] board shall provide for a system of accounts to conform to a uniform system required by law and for annual auditing of the accounts of the treasurer by a certified public accountant. . . . The board shall adopt bylaws, rules, and policies governing the operation and professional work of the hospital and the eligibility and qualifications of its medical staff. Physicians, nurses, attendants, employees, patients, and persons approaching or on the premises of the hospital and furniture, equipment, and other articles used or brought on the premises shall be subject to the bylaws, rules, and policies as the hospital board may adopt or authorize to be adopted. The board may deny or revoke staff membership, or suspend or reduce hospital privileges to a physician who violates a provision of the medical staff bylaws, rules, and policies.

MCL 333.21513(d), which, as noted above, also requires the "owner, operator, and governing body" of a licensed hospital to organize its "medical staff to enable an effective review of the professional practice in the hospital for the purpose of reducing morbidity and mortality and improving the care provided . . . ."

But plaintiff cites no authority for the proposition that this statutory mandate effectively grants every person subject to such bylaws a cause of action for a hospital's failure to strictly abide by them. Indeed, the only remedy specified in MCL 331.6(2) is a hospital board's prerogative to take adverse administrative action against violators; there is no implication that the referenced "[p]hysicians, nurses, attendants, employees, patients, and persons approaching or on the premises of the hospital" have a cause of action, in contract or otherwise, if they are aggrieved by a hospital's failure to adhere to the bylaws.

Even so, "[i]t is well settled under Michigan law that an employer's statement of policy contained in a manual or handbook can give rise to contractual obligations in certain circumstances." *Bodnar v St John Providence, Inc*, 327 Mich App 203, 213; 933 NW2d 363 (2019), lv pending. But as the Supreme Court stated in *Lytle*, 458 Mich at 166, the circumstances bringing about such obligation must constitute the basis for a reasonable expectation rising to the level of an enforceable promise and this outcome is averted by a "contractual disclaimer" that "clearly evidences and communicates the employer's intent not to be bound by the handbook provisions," *id.* at 170.

Plaintiff takes issue with the trial court's reliance on *Lytle*, on the grounds that it neither applied the same bylaws at issue in the present case, nor involved physicians with hospital staff privileges. However, plaintiff fails to explain how these factual differences render *Lytle* inapt.

In *Toussaint*, 408 Mich at 598, our Supreme Court held that an employment contract may take on a just-cause provision "by express agreement, oral or written, or as a result of an employee's legitimate expectations grounded in an employer's policy statements." But *Toussaint* involved no written disclaimers concerning the legal enforceability of any such statements or expectations. Plaintiff suggests that the policy statements here at issue should create enforceable rights even despite such disclaimers, on the ground that the employer in *Toussaint* voluntarily set forth the policies at issue. He also argues that the Supreme Court attached significance to that employer's expectation of deriving a benefit from doing so, see *id.* at 619, in contrast to the legislative mandate at work in this case. But plaintiff presents a distinction without a difference. Plaintiff offers us no reason to doubt that the Legislature expected hospitals themselves to be among the beneficiaries of the requirement to set forth bylaws and policies governing their operations, and, as noted, nothing in the legislation creating a hospital's bylaws suggests a private cause of action. See MCL 331.6(2) and 333.21513(d). Thus, the caselaw establishes that the trial court here correctly determined that the written statements of policy did not rise to the level of enforceable promises in light of the express disclaimers of any contractual significance involved with these bylaws.[4]

## VI. DEFAMATION CLAIM

Plaintiff next argues that the trial court erred in dismissing his defamation claim but he fails to identify any specific document or other communication that he alleges was defamatory or specify the exact words he takes issue with. The trial court's rationale for rejecting plaintiff's defamation claim indicate that plaintiff complained of unfavorable performance reports that defendant offered other prospective employers.

Defamation requires proof of "(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to

---

[4] Plaintiff cites two nonbinding cases from the Saginaw Circuit Court. We agree with the trial court that available binding authority resolves this issue and thus consultation of nonbinding authority is unwarranted.

negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication." *Mitan v Campbell*, 474 Mich 21, 24; 706 NW2d 420 (2005).

In granting defendant summary disposition of plaintiff's defamation claim, the trial court did not address the truth of the subject communications or any attendant damages. Instead, the court decided that defendant was exercising a well-established employer's privilege in issuing the relevant communications. The trial court first noted that plaintiff had admitted signing a document allowing defendant to release information about his employment, which plaintiff does not dispute.

The trial court then cited *Gonyea v Motor Parts Fed Credit Union*, 192 Mich App 74, 78-79; 480 NW2d 297 (1991), in which we recognized that "[a]n employer has the qualified privilege to defame an employee by making statements to other employees whose duties interest them in the subject matter," and recited the elements of the qualified privilege as "(1) good faith, (2) an interest to be upheld, (3) a statement limited in scope to this purpose, (4) a proper occasion, and (5) publication in a proper manner and to proper parties only." The trial court additionally cited MCL 333.20175(5), which requires "a health facility" to report certain adverse actions taken against health professionals, and subsection (6), which provides:

> Upon request by another health facility or agency seeking a reference for purposes of changing or granting staff privileges, credentials, or employment, a health facility or agency that employs, contracts with, or grants privileges to health professionals licensed or registered under [the Public Health Code[5]] shall notify the requesting health facility or agency of any disciplinary or other action reportable under subsection (5) that it has taken against a health professional licensed or registered under [the Public Health Code] and employed by, under contract to, or granted privileges by the health facility or agency.

The trial court determined that, because plaintiff agreed in writing that defendant would be free to provide information about him to prospective employers, "[t]he only way Plaintiff could overcome this, is if Plaintiff shows that Defendant did this out of malice," but that "there was no showing of malice on the Defendant's part."

Plaintiff asserts that the trial court erred by failing to consider the evidence that defendant did not follow its bylaws, that defendant relied on hearsay over plaintiff's denials in deciding to terminate him and providing damaging information to others, that the director of defendant's emergency department "made admissions that contradict the very statements Defendant had made about Plaintiff," and that defendant offered defamatory statements after plaintiff "refused to submit to Defendant's bribe letter."

---

[5] MCL 333.16101 *et seq.*

Concerning the bylaws, as discussed earlier, they clearly disclaim their own contractual significance while deferring to actual contracts. Accordingly, citing defendant's election to act against plaintiff as expeditiously as allowed by the employment agreement, as opposed to through exercise of bylaws procedures, as evidence of bad faith on defendant's part in reporting negatively on plaintiff's employment is speculative.

As to plaintiff's assertion that defendant defamed him with hearsay that he denied, plaintiff's incomplete briefing of this issue specifies neither the alleged hearsay and attendant denials, nor defendant's emergency department director's and defendant's seemingly contradictory statements. In any event, as explained earlier, plaintiff's hearsay objections are without merit. Further, that a medical employer would take note of second-hand information concerning physician misconduct or dereliction of duty, while looking skeptically upon an employee's self-serving explanations in the matter, strikes us as unremarkable. This is likewise the case if not all of an employer's sources of information are entirely consistent about such matters. This seems of particular significance, given that plaintiff's amended complaint asserted that his employment ended not because he was determined actually to have failed to comply with applicable rules and regulations, but because of his "alleged" failure. Truth is an absolute defense to a defamation claim. *Porter v Royal Oak*, 214 Mich App 478, 486; 542 NW2d 905 (1995). That there were such allegations is undisputed.

The trial court additionally stated that defendant "fails to provide any evidence that those who authorized the letter to prospective employers were in anyway involved in the claims asserted in this lawsuit." Plaintiff does not suggest that the court erred in concluding that he failed to show any linkage between defendant's unfavorable reports about his performance and any of defendant's personnel who might have harbored animosity against him.

For these reasons, we reject plaintiff's challenge to the trial court's decision to grant defendant summary disposition on his defamation claim.

## VII. MOTION FOR RECONSIDERATION

In asserting that the trial court abused its discretion in partially denying his motion for reconsideration,[6] plaintiff offers only cursory argument, referring to what is "set forth more fully in the proceeding [sic] discussions," and also "in Plaintiff's motion for reconsideration." Plaintiff thus asks us to search through his appellate brief for an argument supporting reconsideration, or to treat his motion and supporting brief below as fully incorporated into his appellate brief. But, pursuant to MCR 7.212(C)(7), which sets forth detailed requirements for arguments presented in an appellant's brief, an appellant cannot rely on the reader to discover pertinent arguments from other parts of his brief or incorporate by reference his lower-court advocacy. We therefore deem this issue abandoned for lack of clear argument, as required by the

---

[6] See *Kokx v Bylenga*, 241 Mich App 655, 658-659; 617 NW2d 368 (2000) (stating that a court's decision on a motion for reconsideration is reviewed for an abuse of discretion).

court rules.  See *Keller*, 256 Mich App at 339-340; *Rickner v Frederick*, 459 Mich 371, 377 n 6; 590 NW2d 288 (1999).

Affirmed.

Defendant may tax costs under MCR 7.219(A).


/s/ Mark T. Boonstra
/s/ Jonathan Tukel
/s/ Anica Letica